IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH ENGLAND, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | |
| UNITED AIRLINES, INC, ) ) | |
| Defendant. ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Kenneth England ("England"), on behalf of himself and all others similarly situated, through his attorneys, for his Complaint against United Airlines, Inc. ("United" or "Defendant"), states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. On April 20, 2020, United agreed that in exchange for receiving approximately $5 billion dollars in federal paycheck protection funds, it would not require any employee to take a temporary suspension or unpaid leave for any reason, it would not reduce the pay rate of any employee earning a salary or wages, and it would not reduce the benefits of any employee, until September 30, 2020.

2. This lawsuit arises out of United's breach of that agreement. Two weeks after the company signed the agreement to receive paycheck protection funds, United informed all management and administration employees ("M&A employees") that "Effective between May 16 and September 30, domestic M&A employees will be required to take 20 unpaid days off."

1

3. United's breach harms the agreement's intended beneficiaries: United employees. United employees face a substantial reduction in pay as a result of United's policies, despite the billions of federal dollars United received, specifically transferred to the company to protect employees.

4. Plaintiff Kenneth England, one of United's non-union employees, brings this class action lawsuit on behalf of himself and all other non-union employees who are subject to United's Unpaid Time Off Program between May 16, 2020 and September 30, 2020, to enforce the terms of United's agreement with the federal government.

## THE PARTIES

5. Plaintiff Kenneth England works as a shift manager for United at the company's hub at Chicago O'Hare International Airport.

6. Plaintiff England is a citizen of the State of Illinois and resides in and is domiciled in this judicial district.

7. Defendant United Airlines, Inc. is a carrier by air with headquarters in Illinois.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's federal common law breach of contract claim under 29 U.S.C. § 1331.

9. Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. §1391(a)(1) because Defendant resides in the Northern District of Illinois, Eastern Division.

**FACTS**

**The CARES Act**

10. In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economics Security Act, Pub. L. 116-136 ("CARES Act"). The law was passed in response to the COVID-19 pandemic and its economic consequences.

11. The CARES Act authorizes the Secretary of Treasury to provide financial assistance to certain air carriers, provided those air carriers make certain assurances.

12. This financial assistance is described in Subtitle B of the CARES Act, "Air Carrier Worker Support."

13. Subtitle B, Part (a) of the CARES Act, titled "Financial Assistance for Employees Wages, Salaries, and Benefits," provides: "Notwithstanding any other provision of law, to preserve aviation jobs and compensate air carrier industry workers, the Secretary shall provide financial assistance that shall exclusively be used for the continuation of payment of employee wages, salaries, and benefits to (1) passenger air carriers, in an aggregate amount up to $25,000,000,000. . . " § 4112(a).

14. The CARES Act specified certain assurances an air carrier must make to be eligible for financial assistance: "To be eligible for financial assistance under this subtitle, an air carrier or contractor shall enter into an agreement with the Secretary, or otherwise certify in such form and manner as the Secretary shall prescribe, that the air carrier or contractor shall (1) refrain from conducting involuntary furloughs or reducing pay rates and benefits until September 30, 2020." § 4114(a)

15. Guidelines issued by the U.S. Treasury Department mandated that "to be eligible to receive payments," an applicant must agree to "use such payments exclusively for the

continuation of employee wages, salaries, and benefits" and "refrain from conducting involuntary layoffs or furloughs, or reducing pay rates and benefits, of employees of the applicant. . . "

**The United PSP Agreement**

16. United issued a press release on April 15, 2020, announcing that it expected to receive approximately $5 billion in support under the CARES Act. United spokesperson Frank Benenati said, "We thank Congress and the Administration for quickly passing legislation to protect the paychecks of tens of thousands of United Airlines employees and look forward to completing the final agreements with the Treasury Department in the next few days. . . . These funds will cover a portion of our pay and benefits costs through September 30, and we are thankful for the support provided to our employees and their families by the CARES Act. This financial support is critical to our people, who are ensuring air service to communities throughout the country and supporting the shipment of much-needed medical supplies and travel of health care professionals around the globe."

17. On April 20, 2020, United and the Treasury Department entered into a Payroll Support Program Agreement ("PSP Agreement"), attached hereto as Exhibit A. The PSP Agreement provides for an initial support payment of $2,479,249,048.

18. In exchange for this payment, United made the required CARES Act assurance regarding furloughs: "The Recipient shall not conduct an Involuntary Termination or Furlough of any Employee between the date of this Agreement and September 30, 2020." Exhibit A at Paragraph 4(a).

19. United also made the required CARES Act assurance regarding salary and wages: "Except in the case of a Permitted Termination or Furlough, the Recipient shall not, between the

4

date of this Agreement and September 30, 2020, reduce, without the Employee's consent, (A) the pay rate of any Employee earning a Salary, or (B) the pay rate of any Employee earning Wages." Exhibit A, at Paragraph 4(b)(1).

20. United also made the required CARES Act assurance regarding benefits: "Except in the case of a Permitted Termination or Furlough, the Recipient shall not, between the date of this Agreement and September 30, 2020, reduce, without the Employee's consent, the Benefits of any Employee. . ." Exhibit A, at Paragraph 4(b)(2).

21. The Parties defined "employee" in the PSP Agreement to include "salaried, hourly, full-time, part-time, temporary, and leased employees." Exhibit A.

22. The Parties defined a "Involuntary Termination and Furlough" as "the Recipient terminating the employment of one or more Employees or requiring one or more Employees to take a temporary suspension or unpaid leave for any reason, including a shut-down or slow-down of business." Exhibit A.

23. United employees are the intended beneficiaries of the PSP Agreement. The purpose of the primary purpose of the PSP Agreement is to provide funding for employees and to prevent furloughs and reductions in either pay or benefits. All of the funds payable to United under the PSP Agreement must be used for "the continuation of payment of Wages, Salaries, and Benefits to the Employees of the Recipient."

**United's Unpaid Time Off Program**

24. On May 4, 2020, United Executive Vice President of Human Resources and Labor Relations Kate Gebo emailed all management and administrative employees stating that the CARES Act assistance "only covers a part of our payroll costs." As a result, Gebo announced changes to the work schedule for management and administrative employees. Gebo

5

explained, "We will be implementing an unpaid time off program for domestic M&A employees to align with less flying, fewer customers, and less working time for frontline employees. Effective between May 16 and September 30, domestic M&A employees will be required to take 20 unpaid days off."

25. The Unpaid Time Off Program violates the express terms of United's assurance that it would not require "one or more Employees to take a temporary suspension or unpaid leave for any reason, including a shut-down or slow-down of business."

26. Furthermore, the Unpaid Time Off Program violates the intent of the contracting parties to enter into an agreement to protect United employees, and Congress's intention to provide financial support for the employees of air carriers.

27. The Unpaid Time Off Program also violates United's assurance that salaried employees would not face a pay rate reduction.

28. Plaintiff Kenneth England is paid on a salary basis by United. If United requires him to take 20 unpaid days, his salary will be reduced.

## CLASS ACTION ALLEGATIONS

29. Pursuant to Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and other non-union employees subject to United's Unpaid Time Off Program

30. The class Plaintiff seeks to represent is defined as:

All United non-union employees who are subject to United's Unpaid Time Off Program between May 16, 2020 and September 30, 2020. (the "proposed class").

31. The proposed class is so numerous that joinder of all members is impracticable.

32. The claims of the named Plaintiff are typical to the members of the proposed class. The named Plaintiff and members of the proposed class are all the intended beneficiaries of the

PSP Agreement and are all subject to United's policy of mandating unpaid leave in direct violation of the terms of that Agreement. As a result, each and every class member suffered the same harm.

33. Questions of law and fact are common to the class and predominate over any individual questions. Such common questions of law and fact include, but are not limited to, whether the members of the proposed class were the intended beneficiaries of the PSP Agreement and whether United violated the PSP Agreement by requiring employees to take unpaid time off prior to September 30, 2020.

34. Plaintiff will fully and adequately protect the interests of the class. Plaintiff seeks the same recovery as the class, predicated upon the same violations of the PSP Agreement.

35. Plaintiff has retained counsel who are qualified and experienced in the prosecution of employee class actions.

36. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the class.

37. Pursuant to Fed. R. Civ. P. 23(b)(1)(A), the prosecution of this matter in hundreds of identical, individual lawsuits would create a risk of inconsistent results and would establish incompatible standards of conduct for United.

38. Pursuant to Fed. R. Civ. P. 23(b)(2), United has acted, or has refused to act, on grounds generally applicable to the proposed class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, with respect to the class as a whole.

39. Pursuant to Fed. R. Civ. P. 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of the controversy, The damages suffered by the individual class members are small compared to the expense and burden of individual prosecutions of this litigation. Prosecuting hundreds of identical, individual lawsuits would not

promote judicial efficiency or equity. Class certification will eliminate the need for duplicate litigation.

## COUNT I
### Breach of Contract Under Federal Common Law
### (On Behalf of Plaintiff and the Class)

40. Plaintiff hereby realleges and incorporates the above paragraphs of this Complaint, as if fully set forth herein.

41. The PSP Agreement is a binding contract between United and the Department of the Treasury, which by its terms is governed by federal law.

42. United's employees are intended third party beneficiaries of the PSP Agreement under federal common law.

43. United's Unpaid Time Off Program violates the assurances made by United in Paragraph 4 of the PSP Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other members of the proposed class, respectfully requests this Court grant the following relief:

A. That an order be entered certifying the proposed class and appointing Plaintiff and his counsel to represent the class;

B. Permanently enjoining United from further breaching the contract as alleged herein;

C. For all recoverable compensatory and other damages sustained by the Plaintiff and the class, and all other relief allowed under applicable law;

D. For costs;

E. For both pre-judgment and post-judgment interest on any amounts awarded;

F. For payment of attorney's fees and expert fees as may be allowable under applicable law; and

G. For such other and further relief, including declaratory relief, as the Court may deem proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: May 13, 2020

s/Douglas M. Werman
One of Plaintiff's Attorneys

Douglas M. Werman - dwerman@flsalaw.com
Maureen A. Salas - msalas@flsalaw.com
Sarah J. Arendt - sarendt@flsalaw.com
Zachary C. Flowerree - zflowerree@flsalaw.com
Michael M. Tresnowski – mtresnowski@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington Street, Suite 1402
Chicago, IL 60602
Telephone: (312) 419-1008
Facsimile: (312) 419-1025